UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DAVID L. HENSLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 3:10 CV 522 JM |
| v. | ) |
| | ) |
| MARK LEVENHAGEN and ED BUSS, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

David L. Hensley, a *pro se* prisoner, filed a complaint under 42 U.S.C. § 1983. (DE # 1.) Pursuant to 28 U.S.C. § 1915A, the Court must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. Courts apply the same standard under Section 1915A as when deciding a motion under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal, a complaint must state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 602. In determining whether the complaint states a claim, the Court must bear in mind that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Here, Hensley alleges that in March 2010, staff at Indiana State Prison ("ISP") received an anonymous note stating that he was planning to escape while working at his prison job. (DE #1 at 3; DE #1-1 at 7.) He was terminated from his job and placed in segregation for approximately 28 days. Thereafter, he was released back into the general population. In August 2010, he was placed in administrative segregation based on a determination that he posed a threat to the security of the facility if he remained in the general population. (DE #1 at 3; DE #1-1 at 2, 7-8.) He alleges that he was still being held in segregation when he filed the complaint in December 2010. (DE #1 at 6.)

Hensley first claims that his due process rights were violated because he did not receive a hearing before he was terminated from his prison job and placed in segregation. (DE #1 at 5.) The law is clear, however, that prisoners have neither liberty nor property interests in their prison work assignments, and so Hensley was not entitled to due process protections before being terminated from his prison job. *Dewalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000); *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992).

As for Hensley's claim about being placed segregation, the Constitution itself does not create an interest in avoiding transfer within a correctional facility. *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Sandin v. Conner*, 515 U.S. 472 (1995). Instead, an inmate will be entitled to due process protections only when the more restrictive conditions pose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Based on

*Sandin*, the Seventh Circuit has repeatedly held that inmates have no liberty interest in avoiding temporary transfer to segregation imposed for administrative, protective, or investigative purposes, including a determination that the prisoner is an escape risk. *See, e.g., Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008); *Lekas v. Briley*, 405 F.3d 602, 608-09 (7th Cir. 2005); *Wagner v. Hanks*, 128 F.3d 1173, 1176 (7th Cir. 1997). Although long-term segregation approaching a year or more can implicate a liberty interest, Hensley has only been in segregation for a period of four months. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698-99 (7th Cir. 2009) (term of segregation less than six months generally does not trigger liberty interest); *Lekas*, 405 F.3d at 612 (90-day period in segregation did not trigger liberty interest); *Whitford v. Boglino*, 63 F.3d 527, 533 (7th Cir. 1995) (sentence of six months in segregation did not trigger a liberty interest).

Furthermore, the only restrictive condition Hensley complains about is having to eat "cold/lukewarm" meals while in segregation. (DE #1 at 6.) While it may be unpleasant to eat cold "oatmeal, grits, beans and potatoes," this cannot be considered a significant and atypical hardship when compared to the ordinary incidents of prison life. (*See id.*) Indeed, routine discomfort is part of the penalty prisoners pay for their offenses, and prisoners cannot expect the "amenities, conveniences, and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988). Thus, Hensley has not alleged conditions of confinement that would constitute an atypical and significant hardship even if endured over a longer period. *See Lekas*, 405 F.3d at 612 ("The detailed hardships of which Lekas complains [in segregation]. . . are not so atypical and

3

significant as to constitute a deprivation of a liberty interest . . . ."); *Thomas v. Ramos*, 130 F.3d 754, 762 (7th Cir. 1997) ("In spite of [plaintiff's] extended period in disciplinary segregation, we are convinced that it did not result in an atypical and significant deprivation because the conditions he experienced did not greatly exceed what one could expect from prison life generally."). For these reasons, Hensley's due process claim is unavailing.

Hensley next claims that he was placed in segregation for retaliatory reasons in violation of his First Amendment rights. He claims that Mark Levenhagen, the superintendent of ISP, put him in segregation because he was angry that Hensley wrote a letter to the Indiana governor and other officials describing tobacco trafficking at the prison. (DE #1 at 4-5.) "An act taken in retaliation for the exercise of a constitutionally protected right is actionable even if the act, when taken for a different reason, would have been proper." *Lekas*, 405 F.3d at 614. In other words, even though Hensley did not have a liberty interest in remaining in the general prison population, he could not be placed in segregation simply for exercising his First Amendment rights.

To prevail on a First Amendment retaliation claim, a prisoner must show that he engaged in activity protected by the First Amendment; he suffered a deprivation that would likely deter First Amendment activity in the future; and the First Amendment activity motivated the decision to take retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009). Presuming Hensley could satisfy the first two prongs, he fails on the third prong because it cannot be plausibly inferred from the complaint that he was put

4

in segregation for an improper reason. Instead, it is apparent from the complaint and attachments that prison officials had a legitimate reason to place Hensley in segregation, namely, concern that he might try to escape.

Although Hensley makes much of the fact that he wrote the letter to the governor in July 2010 and was placed in segregation in August 2010, suspicious timing alone cannot establish a claim of retaliation. *Smith v. Dunn,* 368 F.3d 705, 709 (7th Cir. 2004). Nor is the timing particularly suspicious. Hensley acknowledges that prison staff received an anonymous note stating that he was planning to escape. He also attaches documentation indicating that there was an incident at his job in which he became "unaccounted for" and staff had to be called in to locate him. (DE #1-1 at 4.) Based on these incidents, a prison staff member recommended to Levenhagen in a memorandum dated August 12, 2010, that Hensley posed a threat to the security of the facility if he remained in the general prison population. (DE #1-1 at 8.) Thereafter, Hensley was placed in administrative segregation.

Although Hensley asserts generally that he did nothing wrong, he does not dispute that prison officials had objective information from which they could have reasonably concluded that he posed an escape risk. Nor does he dispute that it was not Levenhagen but another prison staff member with no apparent link to the letter who made the initial decision to reassign him to the segregation unit. Based on the documents Hensley has submitted, it cannot be plausibly inferred that he was put in segregation for exercising his First Amendment rights.

5

Finally, Hensley alleges that being served cold meals while in segregation violates his Eighth Amendment right to be free from cruel and unusual punishment. (DE #1 at 6.) The Eighth Amendment is implicated only when a prisoner is forced to endure deprivations of the minimal civilized measure of life's necessities. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). Prisoners have a right to a nutritionally adequate diet, *see Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996), but not to food that is tasty or even appetizing, *see Lunsford v. Bennett*, 17 F.3d 1574, 1578 (7th Cir. 1994) (complaint about having to eat "cold and poorly-prepared food" did not state Eighth Amendment claim). Accordingly, Hensley has not alleged the type of severe deprivation that would give rise to an Eighth Amendment claim.

For these reasons, this action is **DISMISSED** pursuant to 28 U.S.C. § 1915A.

**SO ORDERED.**

Date: January 5, 2011

    s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT